Roberts et als. *v.* Hall.

THOMAS ROBERTS, SOLON J. Y. VAIL, STEPHEN STEVENS, AND WILLIAM SIAS *v.* EMERSON HALL.

### *Trust.    Attachment.*

S. devised a farm with the stock and tools thereon to the plaintiffs in trust for G. and his wife and children, during the life of G. and his wife, and at their decease to be divided equally between their children, with authority to the plaintiffs to permit G. to have the management of the trust property so long as from his habits of industry, frugality, &c., they should think it safe and prudent to do so.

*Held,* that though it was competent for the plaintiffs, by some positive act indicating such an intention, to surrender the control of this property to G. whenever they saw fit, so as to vest in him the absolute ownership of it, yet the mere fact that he was suffered by the plaintiffs to live upon and carry on the farm, and to manage and take care of the stock, and to appropriate the avails of the same for the support of himself and family, was not an act of that character, and that even the stock raised by G. from the original stock so devised to the plaintiffs and taken care of by him, could not be attached and held upon his debts.

*Held,* also, that the fact that the value of the property had been enhanced by the labor of G. would not give him a separable or attachable interest in any specific article.

The case of *Trask* v. *Donoghue,* 1 Aik. 370, questioned.

TROVER for a colt, one yearling and two two-years-old cattle, and one lamb.    The defendant pleaded the general issue accompanied with notice that he should defend the action on the ground that he, as deputy sheriff, attached the property in question as the property of one George E. Sias upon writs against him in favor of his creditors, and afterwards sold it upon executions issued upon judgments rendered in said suits, and that the same actually was, when the defendant took it, subject to attachment upon his, George E. Sias', debts.    The cause was tried by the court at the December Term, 1860, in Caledonia county, POLAND, CH. J., presiding.

The following facts appeared on trial :

In 1850 Judge Samuel Sias, being the owner of a farm in Danville with the stock and farming tools thereon, put his grandson, the above mentioned George E. Sias, upon the farm, designing thereby to enable him to get a living for himself and family, the said George being destitute of property and rather

shiftless and improvident. George E. Sias continued to live upon this farm and to carry on the same, and apply the products and avails to the support of himself and family without any particular contract with Judge Sias, until November 2nd, 1857, when a written contract was made between them, that if George should in a husbandlike manner carry on the farm for Judge Sias, he should receive for his compensation for his labor each year the use of the buildings thereon for his family to live in, and also pasturing and keeping for a specified number of cattle, and also a stipulated quantity of produce and fire wood per year; also that George should pay the taxes assessed upon the farm each year, and that all the remaining products of the farm should belong to Judge Sias to be disposed of as he should see fit, and that George should surrender the farm to Judge Sias whenever requested. George continued to occupy the farm under this contract until December, 1857, when Judge Sias died, leaving a will by which he devised unto the plaintiffs this farm and all the stock, farming tools, and other articles thereon, in trust for the said George E. Sias, his wife and children, to be by them held in trust during the natural life of the said George and his wife, and at their decease to be equally divided between their children. The will also contained the following provision in respect to the property so devised to the plaintiffs: " Said trustees are hereby authorized to permit the said George E. Sias to have the management and control of said trust property, at any time and so long, as, from his habits for industry, frugality, temperance, economy and strict attention to his home and family, they shall think it safe and prudent to do so. Said trustees are hereby authorized and empowered to sell and transfer said real estate or any part thereof," with provisions for the mode of investing the proceeds of such sales.

After the death of Judge Sias his executors surrendered to the plaintiffs the property devised by this will to them, and they have ever since had the general charge thereof, but the said George E. Sias has continued to live upon and carry on the farm, take care of the stock and have all the avails thereof for the support of his family, as before Judge Sias' death. The plaintiff Roberts, who was the active trustee under the will,

sometimes sold some of the stock and the products of the farm, and paid out the same for and to George E. Sias as the necessities of himself and family required ; and sometimes George was specially authorized by Roberts to sell some of the products of the farm, and himself received and expended the money. He had no general authority from the plaintiffs to sell any of the products of the farm, but he did so occasionally without their knowledge. It did not appear that the plaintiffs took any control or supervision of the manner of carrying on the farm, but George E. Sias managed it to suit himself, doing or procuring to be done all the labor on the farm, and managed the farm and stock in the same way as if he were the owner thereof. The only control of the personal property upon it, taken by the plaintiffs, was in disposing of it, and preventing the disposal of it by him. George had all the avails and proceeds of the farm and stock for the benefit and support of himself and family, and no account was kept between the plaintiffs and him of the products of the farm except such as they received and disposed of. The stock attached by the defendant was all raised from the stock on the farm at the time of Judge Sias' death, devised to the plaintiffs in trust as above mentioned, and was all raised there by George and taken care of by him until the attachment. This attachment was made upon debts due from him and contracted while thus living on the farm.

Upon these facts the county court decided that the plaintiffs were the lawful owners of the property, and that the same was not subject to be attached on the debts of George E. Sias, and rendered judgment for the plaintiffs, to which the defendant excepted.

*J. Ross,* for the defendant.

*Bliss N. Davis,* for the plaintiffs.

KELLOGG, J. This is an action of trover for a colt, one yearling and two two-years-old cattle, and one lamb, attached by the defendant as an officer on writs in his hands against one George E. Sias, and subsequently sold on the executions issued on the judgments rendered against said George in said suits.

The question for decision is, whether, on the facts appearing in the case, the property in question legally belonged to the said George, so that it was subject to attachment on his debts, at the time of the conversion complained of.

It appears that this stock was raised on a farm in Danville which was owned by Judge Samuel Sias, the grandfather of said George; and there can be no doubt that Judge Sias, under the contract between him and George, was the legal owner of the stock and other property on the farm at the time of his decease in December, 1857. By his will, which was duly proved, he devised and bequeathed to the plaintiffs the said farm, stock, and other property to be by them held in trust for the said George and his wife and children during the natural life of the said George and his wife, and, at their decease, to be divided equally between their children, with authority to permit the said George "to have the management and control of said trust property at any time, and so long, as from his habits for industry, frugality, temperance, economy, and strict attention to his home and family, they should think it safe and prudent so to do." It also appears that George had lived on said farm for several years previous to the decease of his grandfather, and that he was destitute of property, and somewhat shiftless and improvident; and the purpose of this testamentary provision manifestly was to keep the title of this property in the hands of the trustees, leaving it to their discretion how far and when to trust George with it. The property which was attached by the defendant was all raised from stock on the farm at the time of the testator's death, and the legal title to it passed to the plaintiffs as trustees under the provisions of his will. The said George comes into his connection with this property only through these trustees, and he is one, but not the only one, of the *cestuis que trust* for whose benefit the testator made this provision.

It is claimed on the part of the defendant that the trustees having suffered the property to remain in the possession and under the control and management of George, the trust became so far executed as to divest them of their legal title to the property, and to make the products of the farm and the increase and growth of the stock his absolute property. It was undoubtedly

competent for the trustees to surrender the control of this pro-
perty to him whenever they saw fit, so as to vest in him the
ownership as well as the temporary possession and management
of it; but without some positive act indicating an intention on
their part to do this, the legal title to the property should be con-
sidered as remaining in the trustees. The mere fact that he was
suffered by the trustees to live upon and carry on the farm, and to
manage and take care of the stock, and to appropriate the avails
of the same for the support of himself and his family, is not, in
our opinion, an act of that character; as such use, management,
and appropriation of the property by him under the oversight
and control of the trustees is the precise object which the testa-
tor had in view when he made this provision in his will. The
county court have found that after the property passed into the
hands of the trustees, they took, and since have had, the general
charge and supervision of it, and we find nothing in the case to
show that they ever parted with their legal title to it. It is
claimed by the defendant that the value of the property has been
enhanced by the labor of George, but this, if true, would give
to him no separable interest in any specific article of the pro-
perty, although it might furnish ground for an equitable claim,
on the part of his creditors and become the proper subject of an
accounting in a court of equity. But there is nothing in the
facts found in this case which shows that the labor which George
expended in the care and management of the property was worth
any more than the amount of the avails of the property received
by him or appropriated to the support of himself and his family;
and, unless this did appear, there would be no ground for any
equitable claim to the property on the part of his creditors. We
are satisfied that the facts, as found by the county court, will not
justify the conclusion that the trust property was ever so severed
or surrendered by the trustees to him as to transfer to him the
legal title to the property.

The case of *Trask* v. *Donoghue,* 1 Aik. 370, is cited by the
defendant as an authority which is decisive in favor of his
defence in this suit. In that case, it was held that if real and
personal estate be devised to trustees to the use of a *cestui que
trust* during his life, and the trustees put him in possession and

Roberts et als. *v.* Hall.

suffer him to occupy the same without account, the products of such estate may be attached by his creditors. In that case, there was but a single *cestui que trust*, and in this respect it is unlike the present case; but we think that the ground of that decision may justly be questioned. It is stated by HUTCHINSON, J., interrogatively, in these words: "Can one be *cestui que trust* of personal property not exempt by law from attachment, and have the sole visible possession of that property, and add much to its value by his own industry, which, but for this strategem, might produce some other property for his creditors,—and can he hold this property to the exclusion of his honest creditors? The court are of opinion that he cannot." The point of the decision seems to be that such a possession of the trust property by the *cestui que trust* is in itself a fraud *in law* upon his creditors, if he bestows any labor upon it, or in the care of it, because, but for this, his industry might produce some other property for them. There would seem to be equal force in the proposition that the trust itself would be a fraud in law, on the ground that by making any provision whatever for the support of the *cestui que trust*, he would, to the extent of such provision, be relieved from the ordinary incitements to industry, and more especially so in a case in which the provision was ample enough to enable him to live without labor. But perhaps, if the *cestui que trust* was so entirely helpless as to be unable to labor, such a case would not come within the reason or spirit of this decision. The fraud of such a possession of the trust property by the *cestui que trust*, as to his creditors, would, in the light of this decision, rest not upon the possession itself nor upon any fact existing at its commencement, but upon the possession coupled with the fact that the labor of the trustee had added something to the value of the trust property. This is the only ground upon which the creditor could seek to pursue the trust property on a debt against the *cestui que trust*, and, in our opinion, the claim of the creditor to be allowed the benefit of the increased value of the trust property in satisfaction of his debt in such a case would be one cognizable in a court of equity and not in a court of law.

The judgment of the county court in favor of the plaintiffs is affirmed.